2026 IL App (3d) 250305

Opinion filed August 4, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0305 Circuit No. 24-CF-487 |
| LARRY J. KENT, | ) ) ) | Honorable Kathy Bradshaw Elliott and |
| Defendant-Appellant. | ) ) ) | William S. Dickenson, Judges, Presiding. |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justices Holdridge and Bertani concurred in the judgment and opinion.

_____

**OPINION**

¶ 1 Defendant, Larry Kent, was convicted of home invasion (720 ILCS 5/19-6(a)(2) (West 2024)) and was sentenced to eight years of imprisonment. On appeal, defendant argues that (1) the circuit court erred when it construed the home invasion statute as not requiring the injury to be inflicted within the dwelling, (2) his conviction should be reversed because he did not knowingly waive defense counsel's *per se* conflict of interest, and (3) the circuit court erred when it admitted the body-cam video of the victim into evidence. We affirm.

¶ 2                                 I. BACKGROUND

¶ 3        On August 9, 2024, defendant was indicted on charges of home invasion (720 ILCS 5/19-6(a)(2) (West 2024)) and aggravated domestic battery (*id.* § 12-3.3(a)). The former charge alleged that on July 10, 2024, defendant knowingly entered the dwelling of the victim, knowing that she was present within that dwelling, "and intentionally caused injury to [the victim] within such dwelling place, in that the defendant struck [the victim] in the head."

¶ 4        The case was called for trial, beginning on March 10, 2025. At the outset, the court noted that defense counsel had "said something about a waiver." Defense counsel answered in the affirmative; however, no further discussion about the waiver took place.

¶ 5        The record on appeal contains a form titled "Waiver of Conflict," which was signed by defendant and dated March 10, 2025. The form stated that defense counsel informed defendant of a disciplinary action that had been filed against defense counsel and that the prosecutor in defendant's case had been named as a witness in the disciplinary action. The form further indicated that defendant wished to retain defense counsel despite the conflict.

¶ 6        On March 12, 2025, prior to the beginning of the jury trial, the circuit court addressed a motion *in limine*, filed by the State, to admit evidence of the victim's excited utterances as captured on body-cam video minutes after the alleged battery occurred. After finding the victim's statements admissible as excited utterances, the court rejected defense counsel's argument that the body-cam video was unfairly prejudicial. Accordingly, the court granted the State's motion.

¶ 7        The victim testified at trial that she was 18 years old at the time of the incident and had been dating defendant for approximately one year. She stated that she and defendant had gotten into an argument in defendant's car, which was parked outside of her residence, at approximately 9 or 9:30 p.m. She exited the car and walked toward the residence, while carrying her infant

daughter. While she was walking, she heard defendant begin to run after her, so she ran into the residence, closed the door, and engaged the deadbolt lock. Defendant broke into the residence and began hitting the victim with a closed fist about her head and face while she was still holding her daughter. She put her daughter down on the floor and followed defendant outside the residence, as she wanted to get the license plate number from his car. Outside the residence, defendant hit the victim with a closed fist in the head. Subsequently, defendant left the scene in his car. At that time, the victim was sitting in the driveway. She felt pain in several locations and was bleeding. She testified that she had seven staples placed in her head during treatment for her injuries. Photographs of the victim's injuries were also admitted into evidence.

¶ 8 Additionally, the aforementioned body-cam video showing the victim was admitted into evidence over defense counsel's objection. The video lasted 1 minute and 30 seconds and showed the victim's body but not her face. She had blood on her shirt and her arms, as she described what had transpired—namely, that defendant broke into her residence, began hitting her while she was holding her daughter, and hit her again after she went outside to get his license plate number. At times, the victim could be heard crying or sobbing while she described the incident.

¶ 9 On cross-examination, the victim admitted that she was not bleeding inside the residence. She did not notice blood until after defendant left. She also stated that she had noticed some of the damage depicted in photographs of the residence's door prior to the incident. However, she was unsure whether the damage to the deadbolt was also preexisting.

¶ 10 Among the other witnesses called by the State was the victim's treating physician, Dr. Sharona Bryant, who testified regarding the victim's injuries, which included a laceration on the back of her head. Further, two of the victim's uncles testified. They lived in the residence; one

3

witnessed defendant hit the victim inside the residence and one witnessed defendant hit the victim outside the residence.

¶ 11 On the second day of the jury trial, the circuit court initially addressed another motion *in limine* that the State filed, which sought to bar defense counsel from arguing that the home invasion statute required the injury to have occurred within the dwelling. After hearing arguments on the motion, the court found that the statute in fact did not require the injury to have occurred within the dwelling. Accordingly, the court granted the State's motion.

¶ 12 During the jury instructions conference, the circuit court allowed a modified instruction to be given regarding the home invasion statute not requiring the injury to have occurred within the dwelling. The modified instruction was given over defense counsel's objection.

¶ 13 The jury returned a guilty verdict on the home invasion charge. However, a mistrial was declared regarding the aggravated domestic battery charge.

¶ 14 On June 13, 2025, the circuit court sentenced defendant to eight years of imprisonment on the home invasion conviction. Defendant appealed.

¶ 15 II. ANALYSIS

¶ 16 Defendant's first argument on appeal is that the circuit court erred when it construed the home invasion statute as not requiring the injury to be inflicted within the dwelling.

¶ 17 "The primary objective when construing a statute is to ascertain the intent of the legislature and give effect to that intent." *People v. Clark*, 2024 IL 130364, ¶ 15. The best indicator of the legislature's intent comes from the plain and ordinary meaning of the statute's language. *Id.* If the statute's language is clear and unambiguous, no further canons of statutory construction are needed. *People v. Molnar*, 222 Ill. 2d 495, 518-19 (2006). Questions of statutory interpretation are pure questions of law that we review *de novo*. *Clark*, 2024 IL 130364, ¶ 15.

4

¶ 18      As charged in this case, section 19-6(a)(2) of the Criminal Code of 2012 (Code) provides:

> "(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present *** and
>
> ***
>
> (2) Intentionally causes any injury *** to any person or persons within the dwelling place[.]" 720 ILCS 5/19-6(a)(2) (West 2024).

¶ 19      In this case, defendant argues that section 19-6(a)(2) requires the injury to be caused within the dwelling place. The same argument was rejected long ago by the Second District in *People v. Kolls*, 179 Ill. App. 3d 652 (1989). The *Kolls* court held:

> "The proper reading of the phrase 'within such dwelling place' is as a modifier for the words 'any person or persons' as it defines the persons, not the location. The statute requires that the injury be inflicted on a person who was within the dwelling when the defendant made his unauthorized entry and does not require that the injury be inflicted within the dwelling." *Id.* at 656.

The Fourth District cited *Kolls* with approval in *People v. Mata*, 316 Ill. App. 3d 849, 854 (2000).

¶ 20      "It is presumed that the General Assembly knows how courts have interpreted a particular statute." *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 388 (1992). Legislative inaction following judicial interpretation of a statute suggests that the General Assembly agrees with that interpretation. *Id.* Relevant to this case, *Kolls* was decided 37 years ago, and the General Assembly has not amended the home invasion statute in any way to indicate disagreement with *Kolls*. We agree with the interpretation set forth by the *Kolls* court and therefore decline defendant's request for us to reject *Kolls* and *Mata*.

5

¶ 21　　　　We further note that defendant posits two companion arguments on this issue—namely, that the evidence was insufficient to prove that an injury occurred within the dwelling place and that the circuit court erred when it gave a modified jury instruction on the home invasion statute not requiring the injury to have occurred within the dwelling place. Because both of defendant's companion arguments are predicated on an argument we have rejected—that section 19-6(a)(2) of the Code requires the injury to have occurred within the dwelling place—we likewise reject the companion arguments and decline to address them at any further length.

¶ 22　　　　Defendant's second argument on appeal is that his conviction should be reversed because he did not knowingly waive defense counsel's *per se* conflict of interest. Defendant bases his argument on a disciplinary proceeding involving defense counsel in which the prosecutor in the instant case was listed as a witness against defense counsel. Further, defendant argues that because the circuit court did not admonish him regarding the significance of the *per se* conflict, his waiver was ineffective.

¶ 23　　　　The right of a criminal defendant to the effective assistance of counsel includes the right to conflict-free representation. *People v. Acevedo*, 2018 IL App (2d) 160562, ¶ 18. Conflicts can be *per se* or actual. *People v. Fields*, 2012 IL 112438, ¶ 17.

> "A *per se* conflict of interest exists where certain facts about a defense attorney's status, by themselves, engender a disabling conflict. [Citation.] Stated otherwise, a *per se* conflict arises when a defendant's attorney has a tie to a person or entity that would benefit from an unfavorable verdict for the defendant." *Id.*

The question of whether defense counsel labored under a *per se* conflict of interest when the facts are undisputed is a question we review *de novo*. *People v. Yost*, 2021 IL 126187, ¶ 35.

¶ 24　　　　Our supreme court has identified three situations in which a *per se* conflict exists. *Fields*, 2012 IL 112438, ¶ 18. The only situation potentially relevant to this case is when "defense counsel has a prior or contemporaneous association with *** the prosecution." *Id.* If a *per se* conflict is found, the defendant does not need to establish that the conflict affected the attorney's performance. *Id. Per se* conflicts are automatic grounds for reversal unless the defendant waived his or her right to conflict-free representation. *Id.* A waiver of the right to conflict-free representation is not valid unless the defendant is admonished regarding the existence of the conflict as well as its significance. *People v. Nodine*, 2024 IL App (4th) 230269, ¶ 57.

¶ 25　　　　Defendant relies heavily upon *Nodine* in support of his argument. However, *Nodine* is readily distinguishable. In that case, the defendant was represented by an attorney who had previously pled guilty to a forgery charge and had been sentenced to 24 months of conditional second-chance probation. *Id.* ¶ 52. The State filed a petition to revoke the attorney's probation at a time when the defendant's case was ongoing. *Id.* ¶ 53. Thus, as stated by the *Nodine* court, "the same State's Attorney's office was attempting to revoke [the attorney's] second-chance felony probation while simultaneously prosecuting her client." *Id.* ¶ 58. The *Nodine* court found this to be a *per se* conflict of interest. *Id.* Unlike the attorney in *Nodine*, though, defense counsel in this case was not subject to criminal prosecution by the same State's Attorney's office that was simultaneously prosecuting his client. Rather, defense counsel in this case was facing attorney disciplinary proceedings.

¶ 26　　　　Cases exist that have addressed conflicts of interest in the context of attorneys representing clients while simultaneously facing disciplinary proceedings. In that regard, we find *People v. West*, 298 Ill. App. 3d 58 (1998), to be instructive. The *West* court stated the following regarding

7

whether a *per se* conflict arises when an attorney is facing disciplinary proceedings at the same time he or she is representing a defendant:

"That defense attorney has disciplinary proceedings pending during his representation of a defendant does not automatically dictate the conclusion that defendant is entitled to a new trial for ineffective assistance of counsel. *People v. Szabo*, 144 Ill. 2d 525 *** (1991) (supreme court declined to create a *per se* conflict of interest rule where attorney represented criminal defendant while disciplinary action by the ARDC was pending); *People v. Allen*, 220 Ill. App. 3d 772 *** (1991). The mere fact that an attorney may have been distracted by his pending suspension does not rise to the level of *per se* conflict of interest. *Allen*, 220 Ill. App. 3d at 784. Rather, whether a lawyer's services constituted ineffective assistance of counsel should be considered on a case-by-case basis and in light of the standard set forth in *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]. *Allen*, 220 Ill. App. 3d at 782-83; *People v. Perry*, 183 Ill. App. 3d 534 *** (1989).

In order to show that he received ineffective assistance of counsel, defendant must therefore point to facts revealing that his counsel's performance was so deficient that it fell below the objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 65-66.

¶ 27 Notably, defendant does not advance any argument that defense counsel provided ineffective assistance. Rather, defendant claims that the prosecutor being named as a witness in defense counsel's disciplinary proceeding "reasonably exerted a conscious or unconscious influence on [defense counsel's] judgment and his conduct in representing [defendant's] interests." He also claims that "it can be reasonably assumed" that defense counsel "had an interest in having

a cordial and cooperative relationship with the prosecutor that would potentially allow him to obtain a positive outcome in his own proceedings concerning his law license, ability to practice law, and earn a livelihood." Additionally, he claims that the prosecutor's "role as a witness in [defense counsel's Attorney Registration & Disciplinary Commission] proceedings created a coercive dynamic that potentially constrained [defense counsel's] performance considering [the prosecutor] held power, directly or indirectly, over [defense counsel's] professional license, reputation, and survival." However, these alleged indicia of a *per se* conflict of interest are purely speculative and have not been raised within the proper context as explained in *West*. For that reason alone, defendant's argument fails.

¶ 28        Moreover, there are no facts in this case from which this court could find a *per se* conflict of interest. First, defense counsel's disciplinary charges were unrelated to defendant's case. See *id.* at 66. Second, nothing in defendant's trial indicates that defense counsel was impeded by the prosecutor's status as a potential witness against him or otherwise provided ineffective assistance of counsel. In fact, our review of the record reveals that defense counsel provided competent representation, including the pursuit of a good-faith argument for a change in the law governing home invasion, the cross-examination of witnesses, and entering timely and consistent objections. Under these circumstances, we hold that defense counsel did not labor under a *per se* conflict of interest in this case. See, *e.g.*, *id.* at 66 (finding no *per se* conflict of interest when "none of the matters alleged in the disciplinary charges involved defendant's case, defense counsel vigorously represented defendant and made numerous attempts to locate witnesses, and the evidence clearly shows defendant's guilt").

¶ 29       Because defendant has not established that defense counsel labored under a *per se* conflict of interest, we need not address whether defendant knowingly waived his right to conflict-free representation.

¶ 30       Defendant's third argument on appeal is that the circuit court erred when it admitted the body-cam video of the victim into evidence.

¶ 31       Whether evidence should be admitted at trial is a matter within the circuit court's discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. We review a circuit court's decision on the admissibility of evidence for an abuse of discretion. *Id.*

¶ 32       Illinois Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011). The question is not whether the contested evidence is merely prejudicial, as "[a]ll evidence is prejudicial in the sense that it compels the factfinder in one direction or the other." *People v. Woodson*, 2023 IL App (1st) 191353, ¶ 101. Rather, the question is whether the evidence is unfairly prejudicial. *Id.* "Evidence is unfairly prejudicial when it casts a negative light on a defendant for reasons that have little to do with the case on trial." *Id.*

¶ 33       Here, we note that defendant does not contest that the body-cam video was relevant. Rather, defendant argues that the video was more prejudicial than probative because it was graphic and because it was unduly cumulative to other evidence regarding the victim's injuries. Defendant claims (1) the victim testified at trial regarding the sequence of events during the incident, as well as her injuries, (2) photographs of her injuries were admitted at trial, and (3) Dr. Bryant testified

10

regarding the victim's injuries. Defendant further claims that "the video did not shed any additional light on any disputed issue, nor aid the jury in understanding the evidence."

¶ 34 Initially, it must be noted that the State was allowed to admit the body-cam video under the excited-utterance exception to the hearsay rule, and defendant does not contest its admissibility under that exception. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Jan. 25, 2023). "The theory underlying the exception is that the event is so startling that it temporarily stills the capacity for reflection, thus producing statements free of conscious fabrication." (Internal quotation marks omitted.) *People v. Hunter*, 2023 IL App (4th) 210595, ¶ 62. The body-cam video was undisputably probative for its depiction of the clearly distressed victim describing the incident and was not needlessly cumulative in that regard.

¶ 35 Further, while it is true that the body-cam video showed blood on the victim's shirt and arms, it did not show her face or otherwise attempt to show her injuries. It was therefore not cumulative of Dr. Bryant's testimony or the photographs of the victim's injuries, despite defendant's claims to the contrary. The prejudicial effect of the appearance of blood did not substantially outweigh the probative effect of the body-cam video, nor did it cast defendant in a negative light for reasons unrelated to the case (see *Woodson*, 2023 IL App (1st) 191353, ¶ 101). Under the circumstances of this case, we hold that the circuit court did not abuse its discretion when it admitted the body-cam video into evidence.

¶ 36                                                III. CONCLUSION

¶ 37 For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 38 Affirmed.

11

*People v. Kent*, 2026 IL App (3d) 250305

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 24-CF-487; the Hon. Kathy Bradshaw Elliott and the Hon. William S. Dickenson, Judges, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Sekoya Pelayo, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Laura Bialon, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |